## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## AT CINCINNATI DIVISION

| | |
|---|---|
| IN RE: | IN PROCEEDINGS UNDER CHAPTER 13 |
| MARTINO M. WILSON | CASE NO: 17-12075 |
| DEBTOR | JUDGE: BETH A. BUCHANAN |

### MOTION OF WELLS FARGO BANK, N.A. FOR RELIEF FROM STAY FOR REAL PROPERTY LOCATED AT 6517 Greentree Drive, Cincinnati, OH 45224

Wells Fargo Bank, N.A. (the "Creditor") in this proceeding under Chapter 13 of the Bankruptcy Code, and pursuant to 11 U.S.C. §362(d) of the Bankruptcy Code, Rules 4001, 9013 and 9014 of the Bankruptcy Rules and Local Bankruptcy Rule 4001-1, respectfully moves this Court for relief from the automatic stay imposed by 11 U.S.C. §362(a) in order to proceed with a state court proceeding to foreclose on the property located at 6517 Greentree Drive, Cincinnati, OH 45224.  The grounds upon which this Motion is made are more fully set forth in the attached Memorandum in Support.

### MEMORANDUM IN SUPPORT

1.  The Court has jurisdiction over this matter under 28 U.S.C. §§157 and 1334.  This is a core proceeding under 28 U.S.C. §157(b)(2).  The venue of this case and this Motion is proper under 28 U.S.C. §§1408 and 1409.

2.  On December 21, 2012, Martino M. Wilson ("Debtor") obtained a loan from Sibcy Cline Mortgage Services, Inc., in the amount of $127,645.00.  Such loan was evidenced by a Promissory Note dated December 21, 2012 (the "Note"), a copy of which is attached as Exhibit A.

3.      Wells Fargo Bank, N.A. directly or through an agent has possession of the promissory

note and held the note at the time of the Movant's Motion for Relief from Stay.  The

promissory note has been duly indorsed.

4.      To secure payment of the Note and performance of the other terms contained in it, the

Debtor, Martino M. Wilson, executed a Mortgage dated December 21, 2012 (the

"Mortgage").  The Mortgage granted a lien on the real property (the "Property") owned

by the Debtor, Martino M. Wilson, located at 6517 Greentree Drive, Cincinnati, OH

45224 and more fully described in the Mortgage.

5.      The lien created by the Mortgage was duly perfected by the recording of the Mortgage in

the office of the Hamilton County Recorder on January 4, 2013.  A copy of the Mortgage

is attached as Exhibit B.  The lien is the first and best lien on the property.

6.      The Note and Mortgage are currently held by Wells Fargo Bank, N.A.

7.      The value of the Property is $160,590.00, per the Hamilton County Auditor.

8.      As of May 2, 2018, there is currently due and owing on the Note, the outstanding

principal balance of $114,133.33, plus interest accruing thereon at the rate of 3% per

annum from October 1, 2017.

9.      Other parties known to have an interest in the Property are as follows:

        a.   Hamilton County Treasurer, for tax purposes.

10.     The Creditor is entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(1)

and/or 362(d)(2) for these reason(s):

        a.      Per the Note and Mortgage, payments are applied to the last month due.  Based
                upon the foregoing, Debtor has failed to make periodic payments to Creditor since
                February 1, 2018, which unpaid payments are in the aggregate amount of
                $3,337.91 less suspense as of May 2, 2018.

       b.     Since the Bankruptcy was filed, Debtor should have made 11 post-petition payments but has only made 7 payments.  Therefore, the loan is delinquent 4 post-petition payments as of May 2, 2018.

11.     Creditor has completed the Relief From Stay/Adequate Protection Exhibit and Worksheet

     -- Real Estate.

12.     This Motion conforms to the standard form adopted in this District except as follows:

<u>**Clarification of language in Paragraph 3**</u>

WHEREFORE, Creditor prays for an Order from the Court granting Creditor relief from the automatic stay of 11 U.S.C. §362 of the Bankruptcy Code to permit Creditor to proceed under law and for such other and further relief to which the Creditor may be entitled.

Respectfully Submitted,

/s/ Matthew Murtland_____
Shapiro, Van Ess, Phillips & Barragate, LLP
Matthew Murtland (OH-0088290)
4805 Montgomery Road, Suite 320
Norwood, OH 45212
Phone: (513) 396-8100
Fax: (847) 627-8805
Email: mmurtland@logs.com

**Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.**

## **<u>ADDENDUM</u>**

Wells Fargo Bank, N.A. services the loan on the Property referenced in this Motion. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the promissory note.  Movant is the original mortgagee or beneficiary or the assignee of the Mortgage.

## CERTIFICATE OF SERVICE

I certify that on May 7, 2018, copies of the foregoing were served by mailing the same by ordinary U.S. Mail, postage prepaid, and/or electronically as permitted by local rule, to the persons listed below.

### Served by Regular U.S. Mail

Martino M. Wilson
6517 Greentree Drive
Cincinnati, OH 45224

### Electronic Mail Notice List

Amourgis and Associates
Jessica Goldberger
300 East Business Way
Ste 200
Cincinnati, OH 45241

Margaret A Burks
600 Vine Street
Suite 2200
Cincinnati, OH 45202

Office of the U.S. Trustee
36 East Seventh Street
Suite 2030
Cincinnati, OH 45202

/s/ Matthew Murtland
Shapiro, Van Ess, Phillips & Barragate, LLP
Matthew Murtland (OH-0088290)
4805 Montgomery Road, Suite 320
Norwood, OH 45212
Phone: (513) 396-8100
Fax: (847) 627-8805
Email: mmurtland@logs.com

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## CINCINNATI DIVISION

| | |
|---|---|
| **IN RE:** | **IN PROCEEDINGS UNDER CHAPTER 13** |
| **MARTINO M. WILSON** | **CASE NO: 17-12075** |
| **Debtor** | **JUDGE: BETH A. BUCHANAN** |

---

## RELIEF FROM STAY/ADEQUATE PROTECTION
## EXHIBIT AND WORKSHEET – REAL ESTATE
## (For use as required by LBR 4001-1(a)(1))

---

Real property address which is the subject of this motion:
6517 Greentree Drive
Cincinnati, OH 45224

**DEBT/VALUE REPRESENTATIONS:**

Total indebtedness of the debtor(s) at the time of filing the motion
for relief from stay (not to be relied upon as a payoff quotation)
(Principal and Interest) as of May 2, 2018    $    116,149.40
Movant's estimated market value of the real property    $    160,590.00
Source of the estimated valuation    Hamilton County Auditor

**STATEMENT OF ARREARAGE:**

(1)  As of petition filing date:    $    1,095.96
Amounts paid after the date of filing to be applied to the prepetition
default:    $    0.00
(2)  Postpetition:    $    3,337.91

(3)  Monthly payment amount:    $    1,102.18

(4)  Date of Last Payment    April 24, 2018
(5)  Amount of Last Payment    $    486.69

# of payments due postpetition    11    (through payment due April 1, 2018)

# of payments received postpetition    7

# of payments in default postpetition    4

Total amount of postpetition payments currently in default:    $    4,408.72
    + Postpetition late charges    $
    + Other charges    $

404-OH Southern-V1

| | | | |
|---|---|---|---|
| Foreclosure title work | $ | 0.00 | |
| Filing fee | $ | 0.00 | |
| Skip trace | $ | 0.00 | |
| Document acquisition costs | $ | 0.00 | |
| Service Process server | $ | 0.00 | |
| Escrow Shortage | | | |
|     Hazard Insurance | $ | 0.00 | Dates: |
|     Taxes | $ | 0.00 | Dates: |
| Appraisal | $ | 0.00 | |
| Property Inspection | $ | 0.00 | _____ |
| Other (specify) Suspense Balance | $ | ($1,070.81) | |
| = Total Postpetition Arrearage | | $ | 3,337.91 |

**OTHER LOAN INFORMATION:**

Date of the Loan     December 21, 2012

Current Interest Rate     3%

Money paid to and held by the mortgagee but not applied to the loan $1,070.81; if held in the form of checks, balance of such checks $0.00, and identity of holder of the checks n/a.

**REQUIRED ATTACHMENTS TO MOTION:**

    (a) In a Chapter 13 case, a postpetition payment history.

(b) In all cases, copies of documents which indicate movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the real estate mortgage should be attached. The mortgage should bear date stamps reflecting the recording date together with recording references reflecting the recordation of the mortgage with the appropriate county official. If the subject property is registered land, movant shall attach a copy of the registered land certificate or other documentation reflecting that the mortgage was memorialized as a lien on the registered land certificate.

This Exhibit and Worksheet was prepared by:

Respectfully Submitted,

/s/ Matthew Murtland
Shapiro, Van Ess, Phillips & Barragate, LLP
Matthew Murtland (OH-0088290)
4805 Montgomery Road, Suite 320
Norwood, OH 45212
Phone: (513) 396-8100
Fax: (847) 627-8805
Email: mmurtland@logs.com

MIN: ▮▮▮▮▮▮▮

| EXHIBIT A |

**Multistate**

## NOTE

December 21, 2012
(Date)

| 6517 Greentree Drive
Cincinnati, Ohio 45224 |

### I. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means Sibcy Cline Mortgage Services, Inc. and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of One Hundred Twenty Seven Thousand Six Hundred Forty Five and 00/100 Dollars (U.S. $127,645.00), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Three percent (3.000%) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

(A) **Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on February 1, 2013. Any principal and interest remaining on the first day of January, 2043, will be due on that date, which is called the "Maturity Date."

(B) **Place**

Payment shall be made at 8044 Montgomery Road Cincinnati, OH45236 or at such place as Lender may designate in writing by notice to Borrower.

(C) **Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $538.16. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) **Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other (Specify)

### 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

FHA Multistate Fixed Rate Note - 10/95          Initials _MW_          Page 1 of 2

## 6. BORROWER'S FAILURE TO PAY

### (A)  Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of four percent (4%) of the overdue amount of each payment.

### (B)  Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C)  Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

Martino M. Wilson                                         12/21/12

Without recourse, pay to the order
of Wells Fargo Bank, N.A.
on this 21st day of December , 20 12
Sibcy Cline Mortgage Services, Inc.

By Patricia A. Kuether, President

Pay to the Order of

Without Recourse
Wells Fargo Bank, NA

By Scott M. Swanson
Assistant Vice President

011

FHA Multistate Fixed Rate Note- 10/95                  Page 2 of 2

9

Wayne Coates
Hamilton County Recorders Office
Doc #: 13-0001340 Type: MT
Filed: 01/04/13 07:33:05 AM  $84.00
Off.Rec.: 12206   00553  F 62 9   64

Return To:
Lawyers Title of Cincinnati, Inc.
or Griffin Fletcher & Herndon, LLP
3500 Red Bank Road
Cincinnati, Ohio 45227

## EXHIBIT B

_____(Space Above this Line for Recording Date)_____

**State of Ohio**

## OPEN-END MORTGAGE

### MIN



THIS MORTGAGE ("Security Instrument") is given on December 21, 2012.
The Mortgagor is Martino M. Wilson, Unmarried, whose current mailing address is 6517 Greentree Drive
Cincinnati, Ohio 45224 ("Borrower").
This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee
for Lender, as hereafter defined, and Lender's successors and assigns), as mortgagee.  MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of 1901 E. Voorhees Street, Suite C
Danville, IL 61834 tel. (888) 679-MERS.
Sibcy Cline Mortgage Services, Inc. ("Lender") is organized and existing under the laws of Ohio, and whose
address is 8044 Montgomery Road Cincinnati, OH 45236. Borrower owes Lender the principal sum of One
Hundred Twenty Seven Thousand Six Hundred Forty Five and 00/100 Dollars (U.S. $127,645.00).

This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on January 1, 2043.  This
Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all
renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower

FHA Ohio Open-End Mortgage with MERS - 4/96

Amended 1/02

Page 1 of 8        Initials: _mw_

12206      553

does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in Hamilton County, Ohio:

See Exhibit A Attached Hereto and Incorporated Herein

Parcel ID Number: 590-0211-0380
which has the address of 6517 Greentree Drive (street) Cincinnati (City), Ohio 45224 (Zip Code), Ohio: ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

FHA Ohio Open-End Mortgage with MERS - 4/96
Amended 1/02
Page 2 of 8                         Initials: _MW_

12206    554

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

.If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

FHA Ohio Open-End Mortgage with MERS - 4/96

Amended 1/02

Page 3 of 8          Initials: _mw_

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give

FHA Ohio Open-End Mortgage with MERS - 4/96
Amended 1/02

Page 4 of 8      Initials _MLW_

Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

    **8. Fees.** Lender may collect fees and charges authorized by the Secretary.

    **9. Grounds for Acceleration of Debt.**

       **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i)   Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

       **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

        (i)   All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

        (ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

       **(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

       **(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

       **(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

    **10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

FHA Ohio Open-End Mortgage with MERS - 4/96
Amended 1/02

Page 5 of 8         Initials _mw_

**11.  Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12.  Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b).  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13.  Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14.  Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15.  Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16.  Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge.  If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.  As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

    **17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

    If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

    Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

    **18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, costs of title evidence.**

    **If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.)* by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

    **19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

    **20. Advances to Protect Security.** This Security Instrument shall secure the unpaid balance of advances made by Lender, with respect to the Property, for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.

    **21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. {Check applicable box(es)}.

☐ Condominium Rider      ☐ Growing Equity Rider      ☐ Other (specify)

☐ Planned Unit Development Rider      ☐ Graduated Payment Rider

FHA Ohio Open-End Mortgage with MERS - 4/96
                   Amended 1/02

Page 7 of 8     Initials _MW_

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in the Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Martino M. Wilson_
Martino M. Wilson

State of Ohio, County of Butler:

This instrument was acknowledged before me on December 21, 2012 by Martino M. Wilson.

_Pamela M. McGuire_
Notary Public

This instrument was prepared by:
Michael C. Fletcher, Esq.
Griffin Fletcher & Herndon LLP
3500 Red Bank Road
Cincinnati, Ohio 45227
Phone 513-421-6440

PAMELA G. McGUIRE
Notary Public, State of Ohio
My Commission Expires
August 19, 2013

FHA Ohio Open-End Mortgage with MERS - 4/96
Amended 1/02

Page 8 of 8

12206    560

EXHIBIT "A"

Legal Description

Borrower: Wilson

Situate in Section 19, Town 3, Entire Range 1, Springfield Township,
Hamilton County, Ohio and being Lots Numbered Twenty-Nine (29) and
Thirty (30) of Crawley's Subdivision, as the same is recorded in Plat Book 87,
Page 63 and 64 of the plat records of Hamilton County, Ohio.

590-0211-0380

12206    561





Norbert A. Nedel
Hamilton County Recorder's Office
Doc #: 17-0054777  Type: AM
Filed: 06/19/17 01:19:30 PM  $28.00
Off.Rec.: 13441 01656 F      2   408

Recording Requested By: WELLS FARGO BANK, N.A.
When Recorded Return To: ASSIGNMENT TEAM, WELLS FARGO BANK, N.A. MAC: N9289-016 PO
BOX 1629, EAGAN, MN  55121-4400

## CORPORATE ASSIGNMENT OF MORTGAGE

Hamilton, Ohio
"WILSON"

**MIN**

Date of Assignment: June 15th, 2017
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SIBEY
CLINE MORTGAGE SERVICES, INCORPORATED, ITS SUCCESSORS AND ASSIGNS at P.O.
BOX 2026, FLINT, MI  48501-2026
Assignee: WELLS FARGO BANK, N.A. at 1 HOME CAMPUS, DES MOINES, IA  50328

Executed By: MARTINO M. WILSON, UNMARRIED  To: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SIBEY CLINE MORTGAGE SERVICES,
INCORPORATED, ITS SUCCESSORS AND ASSIGNS
Date of Mortgage: 12/21/2012 Recorded: 01/04/2013 In Book: 12206 Page: 00553 as Instrument
No.: 13-0001340  In the County of Hamilton, State of Ohio.

Property Address: 6517 GREENTREE DRIVE, CINCINNATI, OH  45224

Legal:  Situate in Section 19, Town 3, Entire Range 1, Springfield Township, Hamilton County, Ohio
and being Lots Numbered Twenty-Nine (29) and Thirty (30) of Crawley's Subdivision, as the same is
recorded in Plat Book 87, Page 63 and 64 of the plat records of Hamilton County, Ohio.
590-0211-0380

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $127,645.00 with interest, secured
thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained,
and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under
the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever,
subject to the terms contained in said Mortgage.

IN WITNESS WHEREOF, the undersigned, by the officer duly authorized, has duly executed the
foregoing instrument.

    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SIBEY CLINE
MORTGAGE SERVICES, INCORPORATED, ITS SUCCESSORS AND ASSIGNS
On 6-15-17

By
 Alberto O. Castillo
Assistant Secretary

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Minnesota
COUNTY OF Dakota

Yves Akara Kenao

On 6-15-17 , before me, _____ , a Notary Public in the State of
Minnesota, personally appeared _(Alberto O. Castillo)_ , Assistant Secretary,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity, and that by his/her/their signature on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

WITNESS my hand and official seal,

_Yves Akara Kenao_
Notary Expires: / /
1/31/22

YVES AKARA KENAO
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2022

(This area for notarial seal)

Prepared By: PAROMITA SINHA DUTTA, WELLS FARGO BANK, N.A. 1000 BLUE GENTIAN RD,
SUITE 200, EAGAN, MN 55121 1-866-234-8271



Fee Total:        390.50
Conveyance fee:   130.00
Transfer fee:       0.50
Sales amount:     260.00
Permissive fee:   130,000
Hamilton County Auditor
Dusty Rhodes
Sec. 319.202, R.C.
Transfer date:  01/02/2013
Instr. number:    278913
Deed number:      275873
Convey. number:   44506

Wayne Coates
Hamilton County Recorders Office
Doc #: 13-0001339 Type: DE
Filed: 01/04/13 07:32:51 AM  $28.00
Off.Rec.: 12206   00551   F G2  2      63

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
‖1220600551Fb

|  |  |
|---|---|
| Auditor's Parcel No. | 590-0211-0380 |
| LTOC/GF File No. | 12SCC1383 |
| Buyer Name | Wilson |

# GENERAL WARRANTY DEED

Alfred M. Parrillo and Darlene E. Parrillo, Husband and Wife, for valuable consideration paid, grant, with general warranty covenants, to Martino M. Wilson, whose tax mailing address is 6517 Greentree Drive, Cincinnati, Ohio 45224 the real property described more fully in Exhibit A attached hereto (the "Property").

There are excepted from the warranty covenants set forth herein, matters of zoning, conditions and restrictions, and easements of record.

Prior Instrument Reference: Official Record Book 11630, Page 2506 of the Hamilton County, Ohio Records.

The Property is conveyed subject to and there are excepted from the general warranty covenants, the following: 1) Easements, covenants and restrictions of record; 2) Taxes and assessments not yet due and payable; and 3) Legal highways and rights of way.

Alfred M. Parrillo and Darlene E. Parrillo have executed this deed as of December 21, 2012.

_Alfred M. Parrillo_
Alfred M. Parrillo

_Darlene E. Parrillo_
Darlene E. Parrillo

State of Ohio:

County of Butler:

The foregoing instrument was acknowledged before me on December 21, 2012 by Alfred M. Parrillo and Darlene E. Parrillo.

_Pamela G. McGuire_
Notary Public

PAMELA G. McGUIRE
Notary Public, State of Ohio
My Commission Expires
August 19, 2013

This instrument was prepared by:
Michael C. Fletcher, Esq.
Griffin Fletcher & Herndon, LLP
3500 Red Bank Road
Cincinnati, Ohio 45227
513/421-1313

EXHIBIT "A"

Legal Description
For File: **12SCC1383**
Borrower: Wilson

**Situate in Section 19, Town 3, Entire Range 1, Springfield Township, Hamilton County, Ohio and being Lots Numbered Twenty-Nine (29) and Thirty (30) of Crawley's Subdivision, as the same is recorded in Plat Book 87, Page 63 and 64 of the plat records of Hamilton County, Ohio.**

**590-0211-0380**

Auditor: _____ hA

DESCRIPTION ACCEPTABLE

12206    552

**Debtor name:  MARTINO M WILSON**     BK Filing Date:  6/6/2017     **First PP PmtDueDate/Amt:** 7/1/2017 / $1102.18

| | Post Petition Due Date | Classified Payment Amount Due | Date Funds Received | Transaction Amount Received | Date Funds Applied | Classified Total Amount Applied | Debtor Suspense Balance |
|---|---|---|---|---|---|---|---|
| | | | | | | | $0.00 |
| | | | 8/17/2017 | $1,102.18 | | | $1,102.18 |
| | | | | | | | $1,102.18 |
| | 7/1/2017 | $1,102.18 | | | 8/18/2017 | $1,102.18 | $0.00 |
| | | | 9/15/2017 | $1,202.18 | | | $1,202.18 |
| | 8/1/2017 | $1,102.18 | | | 9/19/2017 | $1,102.18 | $100.00 |
| | | | 10/12/2017 | $1,202.18 | | | $1,302.18 |
| | 9/1/2017 | $1,102.18 | | | 10/13/2017 | $1,102.18 | $200.00 |
| | | | | | | | $200.00 |
| | Due date Adjustment to 12/01/2017 | | | | | | |
| | 12/1/2017 | $1,102.18 | 1/30/2018 | $1,724.03 | 1/30/2018 | $1,102.18 | $821.85 |
| | 12/1/2017 | ($1,102.18) | | | 2/6/2018 | ($1,102.18) | $1,924.03 |
| | 12/1/2017 | $1,102.18 | | | 2/7/2018 | $1,102.18 | $821.85 |
| | 1/1/2018 | $1,102.18 | 2/28/2018 | $372.37 | 2/28/2018 | $1,102.18 | $92.04 |
| | | | 3/28/2018 | $492.08 | | | $584.12 |
| | | | 4/24/2018 | $486.69 | | | $1,070.81 |
| | 2/1/2018 | $1,102.18 | | | | | |
| | 3/1/2018 | $1,102.18 | | | | | |
| | 4/1/2018 | $1,102.18 | | | | | |
| | 5/1/2018 | $1,102.18 | | | | | |
| | | | | | | | |
| **Totals** | | **$9,919.62** | | **$6,581.71** | | **$5,510.90** | **$1,070.81** |